## Case No. 17,243.

### The WASHINGTON IRVING.

[Abb. Adm. 336; [1] 7 N. Y. Leg. Obs. 4.]

District Court, S. D. New York. Nov. 14, 1848.

COLLISION — STEAMBOAT AND SAILING VESSEL — EVIDENCE—DEVIATION FROM ANSWER.

1. A collision occurred in the day time, between a sailing vessel sailing on her starboard tack, on a flood tide, and a steamboat; for which a libel was filed on the part of the vessel. *Held*, that it was incumbent on the steamboat to show some improper act or omission on the part of the sailing vessel, causing the collision, or it would be presumed that the steamboat neglected to use those precautions to avoid collision which the law required her to exercise.

[Cited in Dunstan v. Kirkland, Case No. 4,181.]

2. In order to protect the steamboat, such excuse must be set forth clearly in the answer of the claimants, and must be proved as laid.

3. When a steamer and sailing vessel, proceeding in opposite directions, are approaching each other on courses which may lead to a collision, the steamer cannot be excused for holding her way, upon the hypothesis and belief that the sailing vessel cannot with safety to herself keep her tack, but must go about or come into the wind before they meet.

[Cited in Haight v. Bird, 26 Fed. 541.]

4. The law casts upon the steamer the obligation of using effectively and promptly the extraordinary means she possesses to prevent a collision.

[Cited in The James Bowen, Case No. 7,192.]

5. Where the defence in the answer, in a cause of collision between a schooner and a steamboat, rested on faults imputed to the schooner in holding her course across the bows of the steamer under circumstances in which it was her duty to have gone about; and the defence set up by the proofs rested upon faults committed on the part of the schooner in an attempt to come about abruptly, and falling off or drifting in the attempt, against the steamer, —*held*, that the latter defence was a deviation from the answer; and that under the pleadings the claimants were not entitled to the benefit of it.

This was a libel in rem, by Joseph Odell, owner of the schooner Superior, against the steamboat Washington Irving, to recover damages for a collision between the two vessels.

William Jay Haskett and W. Q. Morton, for libellant.

J. W. C. Leveridge, for claimant.

BETTS, District Judge. The collision upon which this action is founded occurred in Hell Gate, near the Westchester shore of the East river, in the day time. The libellant's schooner was sailing eastward on a flood tide into the Sound, and the steamboat was running to New York, crowding close in by the shore of Ward's Island, in slack water, or what was regarded an eddy of the tide. The wind was N. E., and the schooner on her starboard tack from the Pot Rock across toward Negro Point, and in plain view of the steamboat. The starboard side of the schooner and bow of the steamer came in collision.

Under these circumstances it is manifestly incumbent on the steamer to show some improper act or omission on the part of the schooner causing the collision, or it must be presumed that the steamer neglected to use, in due time, the means at her command, and which the law required her to employ to avoid it.

The exculpatory defence must be pleaded specifically in the answer, and must be proved as laid, in order to protect the claimant.

In comparing the pleadings and proofs on this point, they are found not to harmonize, and the difference is essential in its character. The answer charges the whole fault to the schooner, and to have consisted in holding upon her starboard tack, into an eddy and across the bows of the steamer, when her true navigation was to have gone about, as, had she cleared the bows of the steamer, there would not have been room for the schooner to pass or lie between the steamer and the land; and further, by holding that course into the eddy tide, all control of her direction would be lost to her. Upon the assumption of the facts, the argument is cogent, that the pilot of the steamer had no reason to expect the schooner would undertake a movement so hazardous to herself, if not impracticable, and was not bound to take precautions against it, and rightfully continued on the course, which was the proper one, had the schooner been managed according to the usual and safe method of navigation under like circumstances.

There are important assumptions in this line of defence which are not confirmed by the proofs. First, that the steamer was at the time in an eddy out of the tide, where, for that reason, the schooner could not be expected to venture, as, without aid of the tide, she would not have sufficient steerage way to be worked about on the other tack before reaching the shore; and, second, that there was not space between the steamboat and the shore to afford the schooner means of escape from bilging if she could be got past the bows of the steamer.

The officers of the steamboat had a right to act upon the presumption that the schooner would not be intentionally run in dangerous proximity to the shore, or to a point where she must become disabled or embarrassed in tacking by a loss or change of the current. But if these impediments to her course were not palpable and inevitable, the steamboat had no right to anticipate any

---

[1][Reported by Abbott Brothers.]

variation of her course by the schooner, and was bound to regulate her proceedings so as to leave the schooner free to be navigated according to the judgment of her master and pilot. They were entitled to determine, at their discretion, the advantage or prudence of continuing her tack beyond the true tide, and even to what might seem to the officers of the steamer a dangerous proximity to the land.

The law, under circumstances of uncertainty or doubt in respect to these particulars, imposed on the officers of the steamboat the duty of taking timely precaution to secure the sailing vessel the free exercise of the discretion of her master in the choice of her course, and the expedients to be adopted in case he should encounter dangers in pursuing it. Had both vessels been under sail, the schooner being close-hauled, was entitled to run out her tack, or hold it so long as she deemed proper, if the opposite vessel was running free, and this privilege was still broader in respect to a steamer. Her pilot had no right to speculate upon the purpose or duty of the schooner, but, possessing the means and ample time, it devolved upon him to have avoided all hazard of collision by stopping and backing her engine, or starboarding her helm and bearing off into the river, leaving space for the schooner to extricate herself in any manner she might elect.

But these various grounds and assumptions of defence are no way sustained by the proofs produced on the part of the claimant. They are wholly inapplicable to it. The scope and bearing of his testimony is to show that the collision was occasioned by an improper manœuvre of the schooner in luffing up into the wind so as to shake her sails, and thus misleading the pilot of the steamer by indicating the intention to bear off on the larboard tack, and then abruptly veering back upon her former course, when she had approached so near to the steamer that it was no longer in the power of her pilot to go astern of the schooner, or to prevent the latter being blown or drifted against the stern of the steamer.

This line of defence is not within the answer; it is a vital departure from it. It seeks to make an issue on merits outside the allegations of the pleadings. This the law and practice of the court will not permit to be done.

In my opinion, the claimant entirely fails supporting the allegations of his answer, if they could be deemed in law an adequate justification of the acts of the steamer in the transaction complained of, and that the libellant is entitled to a decree condemning the steamer in the damages sustained by the schooner from the collision. It will be referred to a commissioner to ascertain and report those damages to the court. Decree accordingly.